IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| **AMERICAN GOLD LABEL FOODS, INC.**, a Florida Corporation, and **NEIL W. RODIN**, an Individual,<br><br>**Plaintiffs**,<br><br>v.<br><br>**UNITED STATES OF AMERICA**,<br><br>Defendant. | CIVIL ACTION NO. _____<br><br>**COMPLAINT** |

The Plaintiffs, AMERICAN GOLD LABEL FOODS, INC., a Florida Corporation, and NEIL W. RODIN, an Individual, by and through their undersigned counsel and hereby file this Complaint against the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

### SUMMARY OF THE CASE

1. This matter has been brought as a result of a material breach of the parties' Settlement Agreement (Exhibit A) by the United States Department of Agriculture, Food and Nutrition Service, which in pertinent part resolved the parties' disputes in Case No.: 0:22-cv-60052-CIV-SMITH.

2. The Plaintiffs, American Gold Label Foods, Inc., and Neil Rodin (hereinafter collectively referred to as "AGL"), operate a route delivery company engaged in the sale of staple food items. AGL has participated in the Supplemental Nutrition Assistance Program (SNAP) (formerly known as the "Food Stamp Program") as an authorized retailer for nearly fifteen years at the time of this filing.

3. In 2016, the United States Department of Agriculture (USDA), Food and Nutrition Service (FNS), began a targeted campaign specifically against the Plaintiffs in an effort to remove their retailer authorization to participate in SNAP.

4. In 2017, the Agency issued a letter to the Plaintiffs in which it notified the firm that FNS intended to withdraw AGL from the SNAP upon the following grounds: (1) the headquarters staff of AGL were not route drivers; (2) the headquarters staff was "very limited"; and (3) that the individuals who were actually driving the routes were 1099 employees rather than W-2.[1]

5. The Plaintiffs challenged the Agency's withdrawal, filing a request for Administrative Review on March 17th, 2017. A Final Agency Decision was not reached by the Agency until December 23rd, 2021 – four and a half years after the Plaintiffs initially requested it.

6. The Plaintiffs filed a Judicial Review in this District pursuant to 7 U.S.C. §2023(a)(13)-(16), Case No.: 0:22-cv-60052-CIV-SMITH.

7. After a year of litigation, the parties entered into the Settlement Agreement, attached hereto as Exhibit A.

8. In pertinent part, the Settlement Agreement laid a path for the Plaintiffs to restructure their SNAP authorization in such a way that the Agency would be comfortable with AGL's business organization and operations.

9. The Plaintiffs were obligated to file eleven new SNAP license applications: ten (10) home-delivery-route applications (based at cold-storage locations), and one (1) online

---

[1] None of these grounds are factors for consideration in SNAP authorization under the Agency's regulations. See 7 C.F.R. §278.1 generally.

SNAP application (which had a provision to permit the Plaintiffs ninety days to cure any defect).

10. The Plaintiffs filed complete applications for all eleven (11) licenses timely.

11. The Agency, for its part, was required by the Settlement Agreement to process the license applications in accordance with the regulations and statute. See 7 C.F.R. §278.1; 7 U.S.C. §2018.

12. After receipt of the Applications, it quickly became apparent that the Agency had no intention of processing the licenses in good faith as required by the Settlement Agreement, or in a manner consistent with the regulations. Instead, the Agency chose to continue waging an "ends-justify-the-means" campaign to remove the Plaintiffs from SNAP.

13. FNS made several document requests which substantially exceeded the factors set out by the regulations. After objection from the Plaintiffs, the Agency conceded and withdrew a number of the frivolous document requests.

14. For its part, AGL responded completely and timely to all of the document requests issued by the Agency, including the final request which was purposefully timed by the Agency to limit the firm's response time to only five business days (rather than the standard 30 days).

15. On June 9th, 2023, the Agency issued a single denial of the Plaintiffs' ten (10) home-delivery-route applications *en masse* upon grounds which were utterly unrelated to the regulations.

16. The license denial letter failed to individually address the grounds for each denial, instead choosing to treat them collectively despite material differences in the locations.

17. The Agency never processed the Plaintiffs' online application, and never gave the Plaintiffs ninety (90) days to cure any defect.

18. FNS's actions in intentionally and willfully denying the SNAP license applications without basis, and in failing to process the online SNAP licensure application, amounted to breaches of the Government's obligations under the Settlement Agreement.

19. The Plaintiffs have been damaged by the Agency's intentional breaches, and as set forth in more specificity hereunder, seek injunctive, writ of mandamus, and specific performance relief (in addition to attorneys' fees and costs) to remedy the Agency's failures.

## PARTIES

20. Plaintiff American Gold Label Foods, Inc., is a Florida Corporation with a principal place of business in the Southern District of Florida and is engaged in the sale of meats.

21. Plaintiff Neil Rodin is the individual SNAP licensee associated with American Gold Label Foods, Inc.

22. Defendant, the United States of America, operating through the United States Department of Agriculture, Food and Nutrition Service, is a Government Agency responsible for overseeing the Supplemental Nutrition Assistance Program (SNAP).

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this matter pursuant to the terms of the Settlement Agreement as set forth in paragraph 5 of the Agreement, and pursuant to 28 U.S.C. §1346.

24. This Court has jurisdiction over the parties pursuant to the terms of the Settlement Agreement.

25. The Southern District of Florida is the proper venue for this litigation as it is where the Settlement Agreement was entered into, and the location of the parties' related case.

### GENERAL ALLEGATIONS

26. The parties entered into the Settlement Agreement attached hereto as Exhibit A. This Settlement Agreement is a valid and binding contract between the parties.

27. Pursuant to the terms of the Settlement Agreement, the Plaintiffs were obligated to apply for SNAP authorization for ten (10) cold-storage facilities within fourteen days of the Effective Date of the Settlement Agreement. In turn, the Agency was to evaluate the Plaintiffs' firm as a "house-to-house trade route" under 7 C.F.R. §278.1. See Exhibit A, paragraph 2(a).

28. The Plaintiffs timely and completely filed their ten (10) SNAP license applications for the cold storage locations. Each application was separate.

29. In addition to the licenses for the cold-storage facilities, the Plaintiffs were to apply for SNAP licensure for online sales within thirty (30) days of the Effective Date of the Agreement. In the event there were discrepancies in the Plaintiffs' online application, the Plaintiffs were to be afforded ninety (90) days to make such updates or corrections as requested by FNS.

30. The Plaintiffs timely filed their complete online application.

31. During the pendency of AGL's applications, the Agency was obligated to permit AGL to continue utilizing their existing SNAP license "until a determination on the

Plaintiffs' applications are made. Thereafter, the Plaintiffs' current FNS number shall be retired." Exhibit A, paragraph 3.

32. The Defendant never processed the online application.

33. The Defendant never provided AGL with notice of any defect with the application, nor did FNS provide the Plaintiffs ninety (90) days to cure any such defect.

34. The Agency processed the ten (10) home-route-delivery applications in the spring and early summer of 2023.

35. However, during the application process for these routes, the Agency sought to rehash past nonregulatory issues with AGL which had been brought up in the prior Judicial Review, such as the employment type of the route drivers (W-2 vs. 1099).

36. In addition thereto, the Agency sought records regarding AGL's markups for their "ten most commonly sold items" – another category of information which is wholly irrelevant for purposes of SNAP eligibility. See 7 C.F.R. §278.1. Indeed, 7 C.F.R. §278.2(b) notes that FNS is not granted authority to specify what prices a retailer may sell food items at.

37. Absurdly, the Agency sought records of AGL's food inventory purchases for the prior two months, and sales records for the prior seven (7) days when there was no debate that the Plaintiffs' business was engaged solely in the sale of eligible staple food items (meat) and was engaged in doing so at a significant rate.

38. AGL, through counsel, objected to the requests pertaining to the route drivers' employment types, and argued that the Agency was not processing the SNAP applications in good faith or in accordance with SNAP regulations.

39. The Agency conceded and reissued another request for documentation, though it again sought inventory and other records which were unnecessary to determine the Plaintiffs' eligibility to participate at the ten (10) cold storage facility locations.

40. Nevertheless, the Plaintiffs complied with the Agency's requests and produced the documentation timely.

41. The Agency issued yet another request for documents a month and a half later. FNS timed this request with specific intent to cause undue pressure and hardship on the Plaintiffs, providing a mere ten (10) days to respond, half of which were weekend days or holidays (leaving the Plaintiffs with only 5 business days to compile and respond).

42. Despite the intentional hardship created by the Agency's unreasonably short response deadline, the Plaintiffs again complied with the Agency's request and submitted all of the requested documents that existed.

43. Having failed in its attempt to find a technical non-compliance on the part of AGL, FNS decided to issue a single letter to the Plaintiffs denying *all ten cold storage licenses en masse* upon grounds which were plainly arbitrary and capricious, and which had nothing to do with the regulatory considerations outlined in 7 C.F.R. §278.1.

44. These denials violated the terms of the Settlement Agreement and breached the Covenant of Good Faith & Fair Dealing.

45. Furthermore, the Defendant's failure to process the Plaintiffs' online SNAP license was flatly violative of the Settlement Agreement.

## COUNT I: THE AGENCY BREACHED THE COVENANT OF GOOD FAITH & FAIR DEALING

46. The Plaintiffs reaver those allegations set forth above in paragraphs 1-45 as though fully set forth herein.

47. "A covenant of good faith and fair dealing is implied in every contract." *Martorella vs. Deutsche Bank Nat'l Trust Co.*, 931 F.Supp 2d 1218, 1225 (S.D. Fla. 2013) citing *Burger King Corp. vs. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) and *County of Brevard vs. Miorelli Engineering, Inc.*, 703 So.2d 1049, 1050 (Fla. 1997).

48. "Where… a contract vests a party with discretion, the implied duty of good faith and fair dealing attaches as a gap-filling default rule." *Martorella* at 1225. "In filling in the gaps, the covenant of good faith and fair dealing imposes a duty upon the party invested with discretion to act in a commercially reasonable manner that satisfies the reasonable expectations of the contracting parties." *Id* at 1225-1226.

    > "Under an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting." *Id* at 1226 citing *Cox vs. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. Dist. Ct. App. 1999).

    > "Thus, where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox* at 1097.

49. In the instant case, FNS has failed or refused to conduct an evaluation of the Plaintiffs' SNAP applications that was not arbitrary or capricious in nature.

50. The Agency's denial of the Plaintiffs' ten applications, and subsequent attempt to withdraw without processing the eleventh, was not done as the result of an honest mistake, bad judgment or negligence.

51. Instead, the Agency's actions were the result of a conscious and deliberate series of decisions designed to frustrate the agreed upon purpose of the Settlement Agreement and disappoint the reasonable expectations of the Plaintiffs.

52. Such actions on the part of the Defendant intentionally and willfully deprived AGL of the benefits of the Settlement Agreement.

53. Thus, these actions on the part of FNS violated the good faith and fair dealing covenant implied in the parties Settlement Negotiations and the Agency's exercise of discretion in accordance therewith.  See *Lancer Offshore vs. Citgo Group, Ltd.*, 2011 U.S. Dist. LEXIS 34582 (S.D. Fla. 2011) at 9-10.

54. As a result of the Government's breach, the Plaintiffs have been damaged through the denial their ten home-delivery-route license applications.

55. Further, upon information and belief, the Plaintiffs believe that the Government intends to disable their original SNAP license, which would materially damage the Plaintiffs' business by depriving it of SNAP revenue.

56. FNS's deliberate and conscious efforts are laid bare in the licensure denial letter as the grounds for both finding that the Plaintiffs had submitted insufficient information to make a determination, and then determining that the Plaintiffs lacked business integrity, were wholly and completely inconsistent with the Agency's regulatory considerations and past actions.

**WHEREFORE**, the Plaintiffs, AMERICAN GOLD LABEL FOODS, INC., a Florida Corporation, and NEIL W. RODIN, an Individual, respectfully request this Honorable Court enter Judgment Against the Defendant, and enter an Injunction against the Defendant prohibiting it from deactivating the Plaintiffs' existing SNAP license, a writ of mandamus requiring the Agency to

process the applications consistent with SNAP regulations, and an award of the Plaintiffs' attorneys' fees and court costs associated with bringing forth this action.

### Count II: Breach of Contract, Failure to Process Online Application

57. The Plaintiffs reaver paragraphs 1-45 set forth above as though fully restated in this count.

58. The Defendant was obligated by the terms of the Settlement Agreement to process the Plaintiffs' online SNAP license application.

59. FNS never processed this application in breach of the contract.

60. Further, the Government was obligated to provide the Plaintiffs with a ninety (90) day period to cure any defect in the Plaintiffs' online SNAP licensure application.

61. The Government failed to provide such ninety (90) day cure period, also in breach of the contract.

62. The Plaintiffs have been damaged by the Government's breaches of the Settlement Agreement as they relate to the Online SNAP license.

**WHEREFORE**, the Plaintiffs, AMERICAN GOLD LABEL FOODS, INC., a Florida Corporation, and NEIL W. RODIN, an Individual, respectfully request this Honorable Court enter Judgment against the Defendant, the United States Department of Agriculture, Food and Nutrition Service, and order the Defendant to specifically perform its obligations under the terms of the Settlement Agreement as they pertain to the Plaintiffs' Online SNAP licensure, in addition to awarding the Plaintiffs their attorney's fees and costs incurred in bringing forth this action.

### Count III: Breach of Contract - The Agency Failed to Maintain AGL's FNS License During the Application Process

63. The Plaintiffs reaver those allegations set forth in paragraphs 1-45 as though fully set forth herein.

64. During the application process for the ten (10) routes, AGL became aware that the states of Nevada and Colorado had begun prohibiting SNAP transactions between households residing in those states and AGL.

65. The Plaintiffs notified the Government that their SNAP license was not functioning in those states and requested the Agency to reinstate the license in those states.

66. The Defendant is vested with sole authority to regulate and control SNAP retailer licensure, thus only the Defendant could prohibit such transactions.

67. Congress delegated sole authority to the Defendant to manage, authorize and oversee SNAP retailers. 7 U.S.C. §2013(a), §2018. States have control only over the enrollment of SNAP households in the program, but specifically do not control what SNAP retailers are permitted to process transactions. See 7 U.SC. §2018, §2021, §2023.

68. States also lack authority to prohibit SNAP households from redeeming SNAP benefits at specific SNAP-authorized retailers; to the contrary, SNAP beneficiaries can redeem their benefits at any SNAP authorized retailer in every state, the District of Columbia, and the U.S. Virgin Islands, regardless of who issued their EBT card. 7 C.F.R. §278.2.

69. Accordingly, the Plaintiffs reached out to the Defendant several times during the application process and asked that the Agency correct the issue with the states so that the Plaintiffs could continue processing transactions as contemplated and permitted by Paragraph 3 of the Settlement Agreement.

70. The Agency failed to take any action with respect to these matters, and in violation of its obligation to permit the Plaintiffs to continue to utilize the existing FNS license.

71. Such failure amounted to a breach of contract.

72. The Plaintiffs sustained damages as a result of the Defendant's acts and omissions and

seek all remedies available at law to make them whole, including loss of revenues and opportunity costs associated with the failures.

73. Therefore, the Plaintiffs request the Court to enter a *writ of mandamus* requiring the Agency to enforce its exclusive statutory right to manage and oversee SNAP retailers against the States of Nevada and Colorado.

**WHEREFORE**, the Plaintiffs, AMERICAN GOLD LABEL FOODS, INC., a Florida Corporation, and NEIL W. RODIN, an Individual, respectfully request this Honorable Court enter Judgment against the Defendant, the United States Department of Agriculture, Food and Nutrition Service, and enter a writ of mandamus against the Defendant requiring it to prevent individual states from refusing to process transactions for the Plaintiffs' SNAP license(s), in addition to awarding the Plaintiffs their attorney's fees and costs incurred in bringing forth this action.

This matter has been respectfully submitted to the Court by the undersigned attorney and shall be served upon the Defendant in the manner prescribed by the Federal Rules of Civil Procedure, as will be evidenced by the proof of service filed with the Court hereafter.

Dated: March 15th, 2024                                Respectfully submitted,

                            **METROPOLITAN LAW GROUP, PLLC**

                            */s/ Andrew Z. Tapp*
                            ANDREW Z. TAPP, ESQ.
                            Florida Bar No.: 68002
                            1971 W. Lumsden Road, #326
                            Brandon, Florida 33511-8820
                            Telephone:  (813) 228-0658
                            Facsimile:  (813) 330-3129
                            Email:  Andrew@Metropolitan.Legal
                                      LaJeana@Metropolitan.Legal

                            **COUNSEL FOR PLAINTIFFS**